FEDERAL TRADE COMMISSION *v.* AMERICAN TOBACCO COMPANY.

FEDERAL TRADE COMMISSION *v.* P. LORILLARD COMPANY, INC.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Nos. 206 and 207. Argued March 7, 1924.—Decided March 17, 1924.

1. The clause of the Federal Trade Commission Act, § 6(d), empowering the commission to investigate and report facts as to alleged violation of the Anti-Trust Acts when directed by either house of Congress, will not support its demand for disclosure of the records of a corporation in an investigation directed by the Senate not based on such an alleged violation. P. 305.

2. The mere facts of carrying on commerce not confined within state lines and of being organized as a corporation do not make men's affairs public. *Id.*

3. A governmental fishing expedition into the papers of a private corporation, on the possibility that they may disclose evidence of crime, is so contrary to first principles of justice, if not defiant of

the Fourth Amendment, that an intention to grant the power to a subordinate agency will not be attributed to Congress unless expressed in most explicit language.  P. 306.

4. The above act, (§ 9), provides that the commission shall at all reasonable times have access to, for the purpose of examination, and the right to copy, any documentary evidence of any corporation being investigated or proceeded against, and that, to enforce compliance, writs of mandamus may issue upon application of the Attorney General.  *Held,* that access is confined to such documents as are relevant as evidence to the inquiry or complaint before the commission, and that their disclosure cannot be compelled without some evidence of their relevancy and upon a reasonable demand.  *Id.*

283 Fed. 999, affirmed.

ERROR to judgments of the District Court denying petitions for writs of mandamus brought by the Attorney General to compel disclosure of their records, by the defendants, to the Federal Trade Commission.

*Mr. James A. Fowler,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck, Mr. W. H. Fuller* and *Mr. Adrien F. Busick* were on the brief, for plaintiff in error.

The Federal Trade Commission Act confers authority on the Commission to inspect the documents and correspondence specified in the prayer of the petitions. The access here prayed was in connection with both an "investigation" under § 6(a), and with a "proceeding" under § 5.  The documents and correspondence demanded were of a character, and limited to a period, pertinent to the inquiry and the charge of a violation of law.  The objection that correspondence connected with intrastate transactions can not be had is not sound. No privilege attaches to correspondence between a corporation engaged in interstate commerce and its customers written in the ordinary course of business.  *Interstate Commerce Comm. v. Baird,* 194 U. S. 25.

Congress is vested with visitorial power over corporations within the field committed to its jurisdiction and may constitutionally confer authority on executive officers and administrative bodies to exercise such power to enforce laws which they are required to administer. *Hale* v. *Henkel,* 201 U. S. 43; *Guthrie* v. *Harkness,* 199 U. S. 148; *Wilson* v. *United States,* 221 U. S. 361.

Statutes empowering executive officers or administrative bodies to inspect books, documents, and papers of corporations to ascertain whether laws administered by them are being violated are upheld. *United States* v. *Louisville & Nashville R. R. Co.,* 236 U. S. 318; *United States* v. *Union Pacific R. R. Co.,* 98 U. S. 569. Laws empowering state public utility commissions to inspect the books, papers, and documents of corporations subject to their jurisdiction obtain in a number of States. The provisions of these statutes appear to be generally acquiesced in, and have been specifically upheld. *Federal Mining Co.* v. *Public Utilities Comm.,* 26 Idaho, 391; *Federal Trade Comm.* v. *Baltimore Grain Co.,* 284 Fed. 886. *Harriman* v. *Interstate Commerce Comm.,* 211 U. S. 407, distinguished.

Visitorial power applies with equal force to private corporations and corporations in quasi-public business. *Consolidated Rendering Co.* v. *Vermont,* 207 U. S. 541; *Hammond Packing Co.* v. *Arkansas,* 212 U. S. 322; *People* v. *American Ice Co.,* 54 Misc. (N. Y.) 67; *United States* v. *Union Pacific R. R. Co.,* 98 U. S. 569.

Visitorial power of the Government over corporations is not the same as subpoena power or the power to grant a bill of discovery. It comprehends something more than the right to have competent and relevant evidence produced in the trial of a case. *Hammond Packing Co.* v. *Arkansas,* 212 U. S. 322; *Consolidated Rendering Co.* v. *Vermont,* 207 U. S. 541; *Federal Mining Co.* v. *Public Utilities Comm.,* 26 Idaho, 391.

The power committed to the Commission to inspect documents in connection with investigations authorized by § 6 (a) as a basis of reports to Congress, is constitutional. It was recently argued in another case that, as an indispensable incident to its power to legislate, Congress had power to ascertain the facts respecting any subject committed to its legislative jurisdiction. *McCulloch v. Maryland,* 4 Wheat. 316; *Legal Tender Cases,* 110 U. S. 421; 12 Wall. 457, 536; *In re Chapman,* 166 U. S. 661; *Interstate Commerce Comm.* v. *Brimson,* 154 U. S. 447, 476; *Smith* v. *Interstate Commerce Comm.,* 245 U. S. 33; *McDonald* v. *Keeler,* 99 N. Y. 463; *People* v. *Sharp,* 107 N. Y. 427; *Bender* v. *Milliken,* 185 N. Y. 35; *Sheppard v. Bryant,* 191 Mass. 591; 9 A. L. R. 1341; that Congress could constitutionally authorize an administrative body to compel the production of facts concerning any subject over which Congress had jurisdiction, for the reasons (*a*) that the power to collect information is not legislative power and may be delegated; Watson, Const., p. 114; *Burton* v. *United States,* 202 U. S. 344, 367; *Wayman* v. *Southard,* 10 Wheat. 1, 42, 43; *Interstate Commerce Comm.* v. *Goodrich Transit Co.,* 224 U. S. 194; *Bender* v. *Milliken,* 185 N. Y. 35; (*b*) that the act lays down a sufficiently definite rule for the guidance of the Commission; *Field* v. *Clark,* 143 U. S. 649; *Union Bridge Co.* v. *United States,* 204 U. S. 364; *Buttfield* v. *Stranahan,* 192 U. S. 470; *United States* v. *Grimaud,* 220 U. S. 506; (*c*) that it is a proper and constitutional means for carrying into execution the legislative power of Congress; *McCulloch* v. *Maryland,* 4 Wheat. 316, 421; *Legal Tender Cases,* 110 U. S. 421, 440; *United States* v. *Fisher,* 2 Cranch, 358, 396; *First National Bank* v. *Union Trust Co.,* 244 U. S. 416, 424. If natural persons may be summoned to appear and produce documents for inspection of either house of Congress, or of its committees when duly authorized by either house, it would appear compe-

tent for a committee, so authorized, to visit the offices of persons and demand an inspection of relevant books and papers. It would appear that this power may be exercised, at least with respect to corporations, because of the superior power of the State over corporations as distinguished from natural persons. The superiority of this method over that of requiring the production of books and papers at distant points is clear.

To permit the inspection prayed in the Commission's petitions would not violate the Fourth Amendment. Corporations are not entitled to as full a measure of protection under the Fourth Amendment as natural persons. *Essgee Co.* v. *United States,* 262 U. S. 151; *Wilson* v. *United States,* 221 U. S. 361.

Unlike a natural person, a corporation may be compelled to produce its books and papers to convict it of violations of penal statutes or to inflict forfeiture. This Court holds, however, that a corporation is entitled to some protection under this Amendment. It is entitled, presumably, not to have its offices denuded of records to an extent which will render it difficult, if not impossible, to conduct its business. *Hale* v. *Henkel,* 201 U. S. 43, 77. Corporations are also entitled under the Amendment not to have their offices broken open and their papers seized and carried away without warrant of law. *Silverthorne Co.* v. *United States,* 251 U. S. 385.

"Probable cause," "specific charge," or "materiality" need not be proven as a condition precedent to the exercise of the visitorial power. *Hale* v. *Henkel, supra; Wilson* v. *United States, supra.* But if a specific charge must be formulated and probable cause made to appear before an examination can be had under the Federal Trade Commission Act, both conditions have been fully met in the cases at bar. A specific charge of a violation of law was set forth in the notice and demand, and especially in the formal complaint which the Commission filed. Probable

cause to believe that evidence would be found material to this charge was amply shown in the Commission's preliminary report in response to Senate Resolution 129.

The notice and demand was sufficiently specific even under the tests applied to subpœnas duces tecum. *Consolidated Rendering Co.* v. *Vermont,* 207 U. S. 541.

The companies can not assert any constitutional privilege on behalf of their customers.

*Mr. William D. Guthrie,* with whom *Mr. William B. Bell, Mr. William R. Perkins* and *Mr. Bernard Hershkopf* were on the brief, for defendant in error in No. 207.

*Mr. Junius Parker,* with whom *Mr. John Walsh* and *Mr. Jonathan H. Holmes* were on the brief, for defendant in error in No. 206.

MR. JUSTICE HOLMES delivered the opinion of the Court.

These are two petitions for writs of mandamus to the respective corporations respondent, manufacturers and sellers of tobacco, brought by the Federal Trade Commission under the Act of September 26, 1914, c. 311, § 9, 38 Stat. 717, 722, and in alleged pursuance of a resolution of the Senate passed on August 9, 1921. The purpose of the petitions is to require production of records, contracts, memoranda and correspondence for inspection and making copies. They were denied by the District Court. 283 Fed. 999. The resolution directs the Commission to investigate the tobacco situation as to domestic and export trade with particular reference to market price to producers, &c. The act directs the Commission to prevent the use of unfair methods of competition in commerce and provides for a complaint by the Commission, a hearing and a report, with an order to desist if it deems the use of a prohibited method proved. The Commission and the party concerned are both given a resort to the Circuit

Court of Appeals.  § 5.  By § 6 the Commission shall have power (a) to gather information concerning, and to investigate the business, conduct, practices and management of any corporation engaged in commerce, except banks and common carriers, and its relation to other corporations and individuals; (b) to require reports and answers under oath to specific questions, furnishing the Commission such in-. formation as it may require on the above subjects; (d) upon the direction of the President or either House of Congress to investigate and report the facts as to alleged violation of the Anti-trust Acts.  By § 9 for the purposes of this act the Commission shall at all reasonable times have access to, for the purposes of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against and shall have power to require by subpœna the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation.  In case of disobedience an order may be obtained from a District Court.  Upon application of the Attorney General the District Courts are given jurisdiction to issue writs of mandamus to require compliance with the act or any order of the Commission made in pursuance thereof.  The petitions are filed under this clause and the question is whether orders of the Commission to allow inspection and copies of the documents and correspondence referred to were authorized by the act.

The petitions allege that complaints have been filed with the Commission charging the respondents severally with unfair competition by regulating the prices at which their commodities should be resold, set forth the Senate resolution, and the resolutions of the Commission to conduct an investigation under the authority of §§ 5 and 6 (a), and in pursuance of the Senate resolution, and for the further purpose of gathering and compiling information concerning the business, conduct and practices, &c., of

each of the respondent companies.   There are the necessary formal allegations and a prayer that unless the accounts, books, records, documents, memoranda, contracts, papers and correspondence of the respondents are immediately submitted for inspection and examination and for the purpose of making copies thereof, a mandamus issue requiring, in the case of the American Tobacco Company, the exhibition during business hours when the Commission's agent requests it, of all letters and telegrams received by the Company from, or sent by it to all of its jobber customers, between January 1, 1921, to December 31, 1921, inclusive.   In the case of the P. Lorillard Company the same requirement is made and also all letters, telegrams or reports from or to its salesmen, or from or to all tobacco jobbers' or wholesale grocers' associations, all contracts or arrangements with such associations, and correspondence and agreements with a list of corporations named.

The Senate resolution may be laid on one side as it is not based on any alleged violation of the Anti-trust Acts, within the requirement of § 6(d) of the act.   *United States* v. *Louisville & Nashville R. R. Co.,* 236 U. S. 318, 329.   The complaints, as to which the Commission refused definite information to the respondents, and one at least of which, we understand, has been dismissed, also may be disregarded for the moment, since the Commission claims an unlimited right of access to the respondents' papers with reference to the possible existence of practices in violation of § 5.

The mere facts of carrying on a commerce not confined within state lines and of being organized as a corporation do not make men's affairs public, as those of a railroad company now may be.   *Smith* v. *Interstate Commerce Commission,* 245 U. S. 33, 43.   Anyone who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize

one of its subordinate agencies to sweep all our traditions into the fire (*Interstate Commerce Commission* v. *Brimson,* 154 U. S. 447, 479), and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime. We do not discuss the question whether it could do so if it tried, as nothing short of the most explicit language would induce us to attribute to Congress that intent. The interruption of business, the possible revelation of trade secrets, and the expense that compliance with the Commission's wholesale demand would cause are the least considerations. It is contrary to the first principles of justice to allow a search through all the respondents' records, relevant or irrevelant, in the hope that something will turn up. The unwillingness of this Court to sustain such a claim is shown in *Harriman* v. *Interstate Commerce Commission,* 211 U. S. 407, and as to correspondence, even in the case of a common carrier, in *United States* v. *Louisville & Nashville R. R. Co.,* 236 U. S. 318, 335. The question is a different one where the State granting the charter gives its Commission power to inspect.

The right of access given by the statute is to documentary evidence—not to all documents, but to such documents as are evidence. The analogies of the law do not allow the party wanting evidence to call for all documents in order to see if they do not contain it. Some ground must be shown for supposing that the documents called for do contain it. Formerly in equity the ground must be found in admissions in the answer. Wigram, Discovery, 2d ed., § 293. We assume that the rule to be applied here is more liberal but still a ground must be laid and the ground and the demand must be reasonable. *Essgee Co.* v. *United States,* 262 U. S. 151, 156, 157. A general subpœna in the form of these petitions would be bad. Some evidence of the materiality of the papers demanded must be produced. *Hale* v. *Henkel,* 201 U. S. 43, 77. In the

state case relied on by the Government, the requirement was only to produce books and papers that were relevant to the inquiry. *Consolidated Rendering Co.* v. *Vermont,* 207 U. S. 541. The form of the subpœna was not the question in *Wheeler* v. *United States,* 226 U. S. 478, 488.

The demand was not only general but extended to the records and correspondence concerning business done wholly within the State. This is made a distinct ground of objection. We assume for present purposes that even some part of the presumably large mass of papers relating only to intrastate business may be so connected with charges of unfair competition in interstate matters as to be relevant, *Stafford* v. *Wallace,* 258 U. S. 495, 520, 521, but that possibility does not warrant a demand for the whole. For all that appears the corporations would have been willing to produce such papers as they conceived to be relevant to the matter in hand. See *Terminal Taxicab Co.* v. *District of Columbia,* 241 U. S. 252, 256. If their judgment upon that matter was not final, at least some evidence must be offered to show that it was wrong. No such evidence is shown.

We have considered this case on the general claim of authority put forward by the Commission. The argument for the Government attaches some force to the investigations and proceedings upon which the Commission had entered. The investigations and complaints seem to have been only on hearsay or suspicion—but, even if they were induced by substantial evidence under oath, the rudimentary principles of justice that we have laid down would apply. We cannot attribute to Congress an intent to defy the Fourth Amendment or even to come so near to doing so as to raise a serious question of constitutional law. *United States* v. *Delaware & Hudson Co.,* 213 U. S. 366, 408. *United States* v. *Jin Fuey Moy,* 241 U. S. 394, 401.

*Judgments affirmed.*